I am of the opinion that the complaint in this case should have been dismissed, upon the ground that there was no evidence that the defendant had ever seized or had possession or control of the goods, for the possession of which the action was brought.
The evidence of Mr. Knight, one of the firm of Hoyt, Tillinghast Co., and of Mr. Bensel, the deputy sheriff, who had charge of the service of the attachments, is clear and explicit, that the deputy did not see or take possession of any of the goods.
It is plain, I think, from the undisputed facts as to the manner of the service of the attachments, that the deputy-sheriff did not intend to levy on or seize the goods, but only to attach Smith Brothers' interest in the goods, or proceeds of the goods, whatever it might be, as property incapable of manual delivery, under section 235 of the Code.
The service was made by leaving with Hoyt, Tillinghast Co., certified copies of the attachments, with a notice indorsed upon both, to the effect that all the property and effects, rights and shares of stock, with interest thereon and dividends therefrom, *Page 356 
and the debts and credits of Smith Brothers, then in the possession, or under the control, or which might thereafter come into the possession or under the control, of Hoyt, Tillinghast 
Co., would be liable to such attachment, and requiring a delivery of all such property, c., with a certificate thereof.
Mr. Knight testified, that when the first attachment was served, he told the deputy that they (Hoyt, Tillinghast Co.), had advanced on the goods, and must hold them; that the deputy said he required a statement of the amount they had advanced on the goods, and the amount and parcels which had been sold, and that he gave him the certificate, which was introduced in evidence.
Bensel, the deputy, testified, that he gave no directions about the goods, only as to the form and the manner of giving the certificate; that he did not say anything about their disposing of the property; that when he served the second attachment, they told him they had not made any further sales.
In my opinion, there was no evidence to show any levy on or seizure of the goods, or interference with Hoyt, Tillinghast 
Co.'s possession of the same, that would have authorized them to have brought either trespass or replevin.
The defendant had no right to seize and take into his possession the goods under the attachments. Hoyt, Tillinghast 
Co. had a right, by the arrangement or contract under which the goods came into their hands, and they had made their advances, and to which the plaintiffs were parties, to the possession of the goods, and to retain the possession of the goods and to sell them, for the purpose of reimbursing their advances and getting their commissions. (Brownell v. Carnley, 3 Duer, 9, and cases there cited; Holbrook and others v. Wright, 24 Wend., 148;Gihon v. Stanton, 5 Seld., 476.)
The case of Steif v. Hart (4 Comst., 20), appears to have been a technical decision upon the statute relating to executions only. In that case, the Supreme Court decided that the statute, in authorizing a sale under execution of the interest of the pledgor, authorized the sheriff to remove the property *Page 357 
from the possession of the pledgee. This decision was affirmed in the Court of Appeals, solely in consequence of an equal division in the opinions of the members of that court. The statute, by its express words, is confined to sales under executions. InBrownell v. Carnly, above cited, the Superior Court of New York held, OAKLEY, Ch. J., delivering the opinion, that if the decision of the Court of Appeals, in Steif v. Hart, was to be respected and followed, the statute ought not to be extended, by construction, to attachments. The reasons for so holding, as stated by Chief Justice OAKLEY in his opinion, seem to me satisfactory.
Now, it is not to be presumed, that Bensel, the deputy, in serving the attachments, did, or intended to do, what he had no no right to do. He probably had a right, under sec. 235 of the Code, to attach Smith Brothers' interest in the proceeds of the goods, after the payment of Hoyt, Tillinghast Co.'s advances, charges and commissions; and it is plain, I think, that it was this interest that he intended to attach; but on the question whether he did seize or levy on, or take possession of the goods, so that either the plaintiffs, or Hoyt, Tillinghast Co., could maintain an action for their possession, it is immaterial whether he had a right to attach the interest of Smith Brothers' in the proceeds, after payment of the advances, c., or whether, if he had the right to attach such interest, the attachment was properly served for that purpose. Again, conceding that Hoyt, Tillinghast Co. might have maintained trespass or replevin, the plaintiffs could not, because they had neither the possession nor the right of possession. (Putnam v. Wiley, 8 Johns., 432;Sharp v. Whittenhall, 3 Hill, 576.)
If the plaintiffs can maintain this action, they might have claimed an immediate delivery of the goods (Code, §§ 206, 207, 208); but the plaintiffs had no right to the possession of the goods without paying, or offering to pay, to Hoyt, Tillinghast 
Co., their advances charged and commissions. (See cases first above cited.)
Even conceding that the plaintiffs were the owners and consignors of the goods, and that they could, in a proper form of *Page 358 
action, have recovered nominal damages against the sheriff for his proceedings under the attachments, yet in no action or form of action, on the conceded facts of this case, would they have been entitled to recover against the sheriff the value of the goods, or of the goods remaining unsold at the time of the service of the attachments, deducting advances, c.
The goods were in the hands of Hoyt, Tillinghast Co., as the plaintiffs' consignees; they were not removed by the sheriff, but were left in their hands, and sold by them under the original consignment without any interference on the part of the plaintiffs or the sheriff. With the proceeds of the sale in the hands of their own consignees or agents, from aught that appears, ready to be paid over after deducting advances, c., according to the arrangement under which the goods came into the hands of such consignees or agents, would the plaintiffs be entitled to recover of the sheriff the value of the goods, or of the goods remaining unsold at the time of the service of the attachments, deducting advances, c.? If so, and such a recovery was permitted, what would be done with proceeds of the sale in the hands of the consignees after deducting advances, c.? The plaintiffs certainly, conceding their ownership of the goods, would not be entitled to it, after having recovered of the sheriff the value of the goods.
The goods of A B, in the hands of his agent for sale, are levied on by the sheriff as the goods of C D, but not removed. The agent afterwards sells the goods. Can A B sue the sheriff and recover the value of the goods, with the proceeds of the sale in the hands of his agent? It appears to me that he can not, unless he could do so with the proceeds of the sale in his own pocket.
I am of the opinion, then, that the direction given by the court to the jury in this case, if they found the first question submitted to them in the affirmative, then the plaintiffs were entitled to a verdict for the value of the goods remaining unsold, deducting advances, expenses and charges up to time of sale, was erroneous, irrespective of the form or nature of the action. *Page 359 
And considering that the action was to recover the possession of the goods, the direction was erroneous. It should have been, if they found in the affirmative on the first question submitted to them, to find a verdict for the plaintiffs for the goods remaining unsold, and assess their value and the damages for the detention. (Code, § 277.) It appears to me, that the direction to the jury ignored the form of the action, and so, indeed, did the whole trial and the judgment. I think, also, that the verdict and judgment were both irregular.
The jury found a verdict for the plaintiffs, and assessed the value of the property at $5,619.37. They accompanied this verdict with a statement, which must be taken as part of the verdict, showing that the $5,619.37 was the aggregate value of all the goods sent to Hoyt, Tillinghast Co., at different times and in different parcels, less the amount of sales up to the time of the attachment, and stating that this $5,619.37 was the amount due to the plaintiffs, from Hoyt, Tillinghast Co., subject to their advances, commissions, guaranty, interest and expenses usual in such cases, without ascertaining, finding or stating, the amount of such advances, c. If judgment on this verdict had not been suspended until the motion for a new trial at general term was heard, I do not see how any judgment could have been entered on it. The alternative judgment prescribed by the Code, (§ 277,) could not have been entered, for it is plain from the statement that the jury did not intend to find a verdict for the plaintiffs for the value of the goods, or of the goods remaining unsold, without deducting advances, c., or that in case the goods or the unsold goods could not be delivered to the plaintiffs, they should have execution for their assessed value without deducting advances, c.; and a judgment merely for their found or appraised value, less the amount of such advances, c., could not have been entered on the verdict, for the jury did not find or state, in accordance with the direction of the court, the amount of such advances.
The general term, after denying the motion for a new trial, undertook to correct or supply this omission of the jury to *Page 360 
find the amount of the advances, c., by ordering a reference to ascertain the same. This was, in fact, a trial of the action at general term. I suppose that the court, at general term, sitting as an appellate court merely, could not try the action, or make the order of reference. Section 270 of the Code was not intended to confer on the court at general term the power to direct such a reference. Considering the nature of the action, I do not see how such an order of reference could have been made at the trial, or at special term, without the consent of the parties.
The judgment which was entered on the verdict of the jury and the report of the referee, not being in the alternative for the possession of the goods, or for their value, if a delivery could not be had, but for the amount of the verdict, deducting the amount of the advances, c., as found by the referee, was also erroneous, in point of form. (Code, § 277; Fitzhugh v. Winan,
5 Seld., 559.) But this error in point of form might possibly be corrected, if the jury had found the amount of the advances, c.
Upon the whole, conceding that the finding of the jury on the question of fact, whether the goods in question were printed on cloths furnished by the plaintiffs, was conclusive, and that the property or title of the goods in question was in the plaintiffs, in my opinion the judgment of the Superior Court should be reversed, on the grounds above stated.
It is not necessary, therefore, to examine or decide the question of title to the goods, as between the plaintiffs and Smith Brothers; nor the question of their respective rights in or to the proceeds of the sales of the goods, less the advances, c.
As to the first question, the decision of it would not, probably, be of any practical use to the parties; for it is not to be supposed that the plaintiffs could, on a second trial, by other or further proofs, show a right to maintain this action for the possession of the goods, conceding the general property in the goods to have been in them, at the time of the commencement of the action. As to the second question, there can be no amendment of the pleadings in this action to put the *Page 361 
title to the proceeds of the sales of the goods, less advances,c., in issue. I would observe, however, that I do not think there would be much difficulty, on the facts presented in this case, in determining either question.
The judgment of the Superior Court should be reversed, with costs.
DENIO, Ch. J., and SELDEN, J., took no part in the decision.
Judgment reversed, and new trial ordered